UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LAKE REGION MEDICAL, INC.,

       Plaintiff,

   v.

EDWARD PIKE, and

CONFLUENT MEDICAL
TECHNOLOGIES, INC.,

       Defendants.

21-CV-844-LJV
DECISION & ORDER

---

## INTRODUCTION

On July 20, 2021, the plaintiff, Lake Region Medical, Inc. ("Lake Region"), commenced this action in New York State Supreme Court, Erie County, alleging breach of contract, unfair competition, and tortious interference with a contract.  Docket Item 1-4.  Lake Region also moved for a temporary restraining order ("TRO") and preliminary injunction.  Docket Items 1-5, 1-6.  On July 22, 2021, the defendants, Edward Pike and Confluent Medical Technologies, Inc. ("Confluent"), removed the action to this Court.  Docket Item 1.  On August 9, 2021, the defendants responded to the motion for a TRO and preliminary injunction, Docket Item 30; on August 13, 2021, Lake Region replied, Docket Item 35; and on August 16, 2021, the defendants surresponded, Docket Item 39.

For the following reasons, the motion for a TRO is denied.

## **BACKGROUND**

Lake Region is a wholly-owned subsidiary of Integer Holdings Corporation ("Integer"), having been acquired by Integer in October 2015.  Docket Item 1-7 at ¶ 3.  Integer develops, designs, and manufactures medical devices and medical device components, including vascular components such as catheters.  *Id.* at ¶¶ 4-6.

Pike worked at Lake Region, including at its predecessor Accellent, Inc., from October 2009 until his employment was terminated in March 2021.  *Id.* at ¶¶ 11-12; Docket Item 31 at ¶¶ 4, 7, 14.  Pike performed various roles at Lake Region over the years; most recently and most relevant here, however, he served as a director of strategic accounts.  Docket Item 1-7 at ¶ 12.  In that role, "Pike was Integer's ambassador to one of its largest clients"—"Client A."  *Id.* at ¶ 14.  More specifically, "Pike was responsible for managing the cardio and vascular suite of products and equipment sold to Client A," *id.* at ¶ 15; his duties included "managing and negotiating (together with other senior level Integer managers) Client A's contracts, developing business terms and the relationship generally, budgeting the account, developing production methodologies and new products, monitoring sales pipeline activity, strategizing price points and profitability, selling productions[,] and interacting with [Client A] on a day[-]to[-]day basis," *id.* at ¶ 18.

Integer terminated Pike's employment on March 17, 2021, because Pike had failed to meet his sales targets for Client A.  *Id.* at ¶ 24; Docket Item 31 at ¶ 14.  At that time, Pike and Lake Region executed a "Release Agreement and Acknowledgment" (the "separation agreement"), which included a twenty-six-week non-complete clause.

*See* Docket Item 1-7 at 6-14.  In relevant part, the non-compete clause states that Pike shall not

> either directly or indirectly, alone or in conjunction with any other person or entity (other than the Integer Companies), engage in any Prohibited Activity. "Prohibited Activity" means performance of any duties that are: (i) substantially similar to or the same as those which you performed in connection with your employment with any Integer Company; and (ii) either (A) directly or indirectly relating to or otherwise competitive with any Restricted Product Category products or lines of business; or (B) in any other capacity not limited by product category or line of business within the Integer Companies, if and to the extent your duties with the Integer Companies included corporate functions; and (iii) for or on behalf of either: (A) any Direct Competitor; or (B) any other person or entity that offers, or plans to offer, products or services that are competitive with the products or services provided by, or under development by, any of the Integer Companies.  In any case, an activity is not a Prohibited Activity unless it is performed anywhere in the sales territory of the Integer Companies.  You acknowledge and agree that the job duties you performed for the Company affect the Integer Companies throughout their sales territory. Prohibited Activity also includes activity that may require or inevitably require disclosure of proprietary information or Trade Secrets.

*Id.* at 9-10 (paragraph 7(a)).  The separation agreement defines "Restricted Product Category" as "any or all of the following product categories or lines of business within the Integer Companies to which [Pike] provided services, support[,] or had access to [t]rade [s]ecrets[] during [Pike's] employment: . . . (2) Cardio & Vascular." *Id.* at 10 (paragraph 7(d)(i)).

After Pike left Lake Region, he interviewed and accepted employment with Confluent as senior financial controller at Confluent's facility in Orange County, California (the "Orange County facility").  Docket Item 31 at ¶¶ 25, 28.  Like Lake Region, Confluent manufactures and produces medical devices and medical device components, including cardio and vascular components.

3

As senior financial controller at the Orange County facility, Pike's "core job duties are to work closely with manufacturing operations to ensure accuracy of material, labor, and overhead cost allocated to jobs, participate in the month-end close process, including preparation and analysis of journal entries and various operating reports[,] and generally collaborate with the Orange County [f]acility plant staff to meet site-specific profit and loss targets." *Id.* at ¶ 30.  Pike spends approximately 50% of his time on a "lean accounting pilot program," *id.* at ¶ 31, which "is a financial management practice that focuses on waste elimination by tracing costs directly to the manufacturer's cost of goods sold to eliminate redundancies and unnecessary inventory," *id.* at ¶ 25.  Pike also "consult[s] on lean accounting implementation for Confluent's Austin, Texas[,] and Costa Rica facilities, but [he] do[es] not have any involvement in pricing, inventory, manufacturing, sales, or client relationships for [any] facility."  *Id.* at ¶ 31.

## **LEGAL STANDARD**

"Temporary restraining orders and preliminary injunctions are extraordinary and drastic remedies, which are never awarded as of right[] or as a routine matter."  *Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 483-84 (W.D.N.Y. 2018) (citation and internal quotation marks omitted).  A party seeking a TRO or a preliminary injunction must show:  (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of the injunction; (3) that the balance of hardships tips in the movant's favor; and (4) that the public interest is not disserved by the issuance of the injunction.  *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010); *Rush*, 314 F. Supp. 3d at 484.  When the moving party is unable to demonstrate a likelihood of success on the merits, a court still may issue a preliminary injunction if the moving party shows "sufficiently

4

serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (quoting *Citibank N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985)). "Irreparable harm is 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999) (quoting *Rodriguez v. DeBuono*, 162 F.3d 56, 61 (2d Cir. 1998)).

## DISCUSSION

Lake Region argues that Pike violated the non-compete clause when he accepted the senior financial controller job at Confluent. *See* Docket Items 1-5, 35. Lake Region asks this Court to enjoin Pike's employment at Confluent for a period of twenty-six weeks. *See* Docket Item 1-6. As explained in more detail below, Lake Region has not shown that it is likely to succeed on the merits of its claims or that it will suffer irreparable harm absent injunctive relief. For those reasons, Lake Region's motion for a TRO is denied.

I.      **LIKELIHOOD OF SUCCESS ON THE MERITS**

The non-compete clause prohibits Pike from performing duties (1) that are "substantially similar to or the same as" those he performed at Lake Region; and (2) that are related to "product categories or lines of business . . . to which [Pike] provided services, support[,] or had access to [t]rade [s]ecrets" or that "may require or inevitably require disclosure of proprietary information or [t]rade [s]ecrets"; (3) if those duties are performed for or on behalf of Lake Region's direct competitor.[1]  See Docket Item 1-7 at 9-10.[2]  Lake Region argues that Pike's current role as a senior financial controller at Confluent's Orange County facility is substantially similar to his prior role as a director of strategic accounts at Lake Region and will inevitably lead to the disclosure of confidential information.  See Docket Item 35 at 7-10.  This Court disagrees on both fronts.

   A.      **Substantially Similar Duties**

Lake Region argues that Pike's duties as senior financial controller at the Orange County facility are substantially similar to his prior duties at Lake Region because at Confluent, Pike analyzes the profitability of products, including extrusions, and at Lake Region, Pike sold extrusions to Client A.  Id. at 7-8; see also Docket Item 36 at ¶ 18.

---

[1] At oral argument on August 18, 2021, the parties agreed that Confluent is Lake Region's direct competitor.

[2] All of Lake Region's claims allege that Pike violated the non-compete clause. See Docket Item 1-4 at ¶¶ 70-76, 81-84 (claim for breach of contract against Pike); id. at ¶¶ 89-90 (claim for unfair competition against Pike and Confluent); id. at ¶¶ 92, 94-95 (claim for tortious interference against Confluent).  Therefore, to determine whether Lake Region has demonstrated that it is likely to succeed on the merits of these claims, this Court first analyzes whether Lake Region has shown that it is likely to succeed in proving that Pike violated the non-compete clause.

But that argument misses the mark.  The fact that Confluent and Lake Region both produce extrusions and that Lake Region sells extrusions to Client A does not show that Pike's **duties** at Confluent are substantially similar to those he had at Lake Region.  It shows only that Confluent and Lake Region generally compete with each other, a fact that no one disputes.

If all that mattered were the competitiveness between Confluent and Lake Region, the non-compete clause would prohibit Pike's employment at any of Lake Region's direct competitors.  But Lake Region itself has acknowledged that is not the case.  Docket Item 35 at 6 ("If Pike and Confluent truly wanted to honor Pike's contractual obligations . . . , Confluent could have hired Pike and placed him in a position that was innocuous and in which he bided his time for twenty-six weeks.").  Rather, the precise focus is on the actual duties that Pike performed at Lake Region as compared to the duties he now performs at Confluent.  *See* Docket Item 1-7 at 10 (non-compete clause defining "[p]rohibited [a]ctivity" as the "*performance of any duties* that are . . . substantially similar to or the same as . . .") (emphasis added).  And a closer look at the duties performed in both roles shows that the two positions[3] appear to be very different.

As a director of strategic accounts at Lake Region, Pike was responsible for all the cardio and vascular equipment sold to Client A.  He "manag[ed] and negotiat[ed] . . . contracts," "budget[ed]" Client A's account, developed Lake Region's relationship with

---

[3] Although the non-compete clause prohibits Pike from performing duties substantially similar to any of his prior roles at Lake Region, Lake Region's arguments focus only on Pike's most recent role as a director of strategic accounts.  *See generally* Docket Items 1-5, 35.

Client A, and managed that relationship on a daily basis.  *Id.* at ¶ 18.  As a senior financial controller at Confluent, on the other hand, Pike's primary responsibility is to implement a "lean accounting" program at the Orange County facility.  Docket Item 31 at ¶ 31.  He tracks and implements a pilot accounting program to meet internal budget goals and does not set prices or aim to increase sales.  *Id.* at ¶¶ 31-33; Docket Item 32 at ¶¶ 9, 12-13.  That is plainly different than Pike's prior sales role, and Lake Region therefore has not met its burden of showing its substantial similarity.

Indeed, Lake Region seemed to concede this point during oral argument: counsel said that although the two positions seem facially distinct, Pike nevertheless will use Lake Region's confidential pricing information in a substantially similar way at Confluent.  But again, that argument misses the mark.  Under the non-compete clause, the question is whether Pike's *duties* in the two roles are substantially similar.  And Lake Region has not demonstrated, at least on the current record before this Court, that they are.

### B. Inevitable Disclosure

Lake Region also argues that Pike's position as senior financial controller at Confluent will lead to the inevitable disclosure of Lake Region's confidential information.  *See* Docket Item 35 at 9-10.  To determine whether the disclosure of information is inevitable, courts look to "(1) the extent to which the new employer is a direct competitor of the former employer; (2) whether the employee's new position is nearly identical to his old one, such that he could not reasonably be expected to fulfill his new job responsibilities without utilizing the trade secrets of his former employer; (3) the extent to which the trade secrets at issue would be valuable to the new employer; and (4) the

nature of the industry and its trade secrets." *Payment All. Int'l, Inc. v. Ferreira*, 530 F. Supp. 2d 477, 482 (S.D.N.Y. 2007) (citation omitted); *see also Int'l Bus. Machs. Corp. v. Visentin*, 2011 WL 672025, at *16 (S.D.N.Y. Feb. 16, 2011).

Although Confluent and Lake Region are direct competitors and the medical device industry involves trade secrets, Pike's new position is anything but "nearly identical" to his old one. "[T]he purpose of the 'nearly identical' prong is to uncover whether an employee will necessarily draw upon prior protectable information at his new job." *Id.* at *19. And here, there is no evidence that Pike will necessarily disclose any confidential information that he learned at Lake Region in his new role. Indeed, as explained above, Pike focused entirely on managing the sales relationship with Client A at Lake Region. But at Confluent, Pike does not work with Client A—or even in sales— nor does he set prices or work in engineering products. *See supra.*

Lake Region argued at oral argument that Pike's disclosure of Lake Region's confidential information is nevertheless inevitable because Pike knows Lake Region's profitability metrics for extrusions. According to Lake Region, this means that Pike, in implementing the lean accounting program, can use Lake Region's confidential pricing information to drive down the Orange County facility's pricing of extrusions; that, in turn, will drive down its pricing of catheters. But even accepting all this as something that Pike *could* do, it does not follow that disclosure of the confidential pricing information is *inevitable*—that is, that Pike could not perform his job as senior financial controller without disclosing, or even using, Lake Region's confidential information. So while Lake Region's concerns might be valid in a general sense, they are too speculative and attenuated to warrant a TRO now.

In sum, Lake Region has failed to demonstrate, at least on the current record, that it is likely to prove that Pike violated the non-compete clause.  Accordingly, Lake Region has failed to demonstrate that it is likely to succeed on the merits of its claims.[4]

## II.   IRREPERABLE HARM

Lake Regions argues that it will suffer irreparable harm absent injunctive relief because it will suffer the "loss of customer relationships and customer goodwill," Docket Item 1-5 at 20, and "its trade secrets likely will inevitably be disclosed," Docket Item 35 at 12.  Lake Region also argues that Pike acknowledged that a breach of the non-compete clause would constitute irreparable harm when he signed the separation agreement.  Docket Item 1-5 at 20.

Lake Region's loss-of-customer-goodwill argument appears to be premised on its concern that Pike will interfere with Lake Region's relationship with Client A.  *See* Docket Item 1-5 at 15.  But Pike does not work with Client A at Confluent.  Docket Item 31 at ¶ 39; Docket Item 32 at ¶ 13.  Moreover, as explained above, there is no indication that it is inevitable Pike will disclose Lake Region's confidential information in his new role.  *See supra.*  And Lake Region's remaining argument relies on the assumption that Pike violated the non-compete clause.  *See* Docket Item 1-5 at 20 (citing *Iannucci v. Segal Co.*, 2006 WL 8407380, at *3 (S.D.N.Y. June 27, 2006) ("A movant's demonstration of irreparable harm is strengthened significantly where the employee has

---

[4] Moreover, given the defendants' sworn admissions before this Court about Pike's new job duties, Lake Region also has failed to show a "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward [it]."  *See Citigroup Glob. Mkts*, 598 F.3d at 35 (citation omitted).

previously acknowledged—most often in an employment agreement—that his or her own breach of a restrictive covenant entitles the employer to injunctive relief because of the irreparable injury the movant would incur[.]")).  But this Court already found that Lake Region has not demonstrated that it is likely to prove that Pike has breached his agreement with Lake Region.  Therefore, Lake Region has failed to demonstrate irreparable harm absent injunctive relief.

## **CONCLUSION**

For all those reasons, Lake Region's motion for a TRO, Docket Item 1-6, is DENIED.  This Court will refer the matter to a magistrate judge for discovery on Lake Region's motion for a preliminary injunction, as well as on the issues related to its claim for damages, in a separate order.

SO ORDERED.

Dated:  August 20, 2021
        Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE